PEOPLE ex rel. O'LOUGHLIN v. BOARD OF ESTIMATE AND APPORTIONMENT OF CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, Second Department. April 9, 1915.)

REGISTERS OF DEEDS ⊕⇒2½.—AUTHORITY—EMPLOYÉS.

    Laws 1901, c. 706, § 2, which fixed the salary of various employés of the register of deeds, provided that he might appoint as many copyists and recording clerks as might be necessary, each for a certain compensation. Laws 1904, c. 699, which amended the earlier statute, provided for the appointment of not more than 35 copying clerks at a salary of $1,200· per year, while Laws 1906, c. 496, which also amended the law of 1901, provided that the register might employ temporary copyists, who shall be engaged only when the regular force is behind with the work. *Held*, that the register ·of deeds could not place regular copyists at other duties, and then engage temporary assistance.

    [Ed. Note.—For other cases, see Registers of Deeds, Dec. Dig. ⊕⇒2½.]

Appeal from Special Term, Kings County.

Application by the People, on the relation of Edward T. O'Loughlin, for a writ of mandamus against the Board of Estimate and Apportionment of the City of New York and others. From an order

granting a peremptory writ (87 Misc. Rep. 601, 150 N. Y. Supp. 12), respondents appeal. Order reversed, and motion for peremptory writ denied.

Argued before JENKS, P. J., and BURR, STAPLETON, RICH, and PUTNAM, JJ.

Thomas F. Magner, of Brooklyn (George A. Green, of Brooklyn, on the brief), for appellants.

Jesse Fuller, Jr., of Brooklyn, for respondent.

BURR, J. By an act which took effect on May 3, 1901 (Laws of 1901, c. 706), the Legislature provided that on and after January 1, 1902, the office of register of the county of Kings should be a salaried office. The act continued (section 2):

"On and after the first day of January, in the year nineteen hundred and two, the salaries to be paid the assistants, clerks, employés, or subordinates employed in the said register's office shall be a rate per annum as follows: The deputy register, five thousand dollars; the assistant deputy register, twenty-five hundred dollars; one expert of records, three thousand dollars; one bookkeeper, fifteen hundred dollars; one mailing clerk, twelve hundred dollars; chief clerk of records, eighteen hundred dollars; one entry clerk, fifteen hundred dollars; one tickler clerk, fifteen hundred dollars; one chattel mortgage clerk, fifteen hundred dollars; one assistant chattel mortgage clerk, twelve hundred dollars; one satisfaction clerk, twelve hundred dollars; chief block index clerk, eighteen hundred dollars; chief current index clerk, eighteen hundred dollars; chief clerk of copyists, eighteen hundred dollars; seven assistant index clerks, twelve hundred dollars each; three abstract clerks, twelve hundred dollars each; four comparers, twelve hundred dollars each; two custodians, one thousand dollars each; one secretary, fifteen hundred dollars; one keeper of coatroom, seven hundred and twenty dollars; four messengers, eight hundred dollars each. *The register may also appoint as many copyists and recording clerks as in his judgment may be necessary for the proper conduct of his office.* * * * Each recording clerk and copyist shall receive as his full compensation therefor five cents for each folio recorded or copy made by him pursuant to the direction or authority of said register."

This section was amended in 1904 (Laws of 1904, c. 699); again in 1906 (Laws of 1906, c. 496); and again in 1913 (Laws of 1913, c. 776). By the amendatory act of 1904, the Legislature re-enacted section 2 of the act of 1901, specifying the positions in the register's office, and the salaries attached to each, but struck out the words:

"The register may also appoint as many copyists and recording clerks as in his judgment may be necessary for the proper conduct of his office. * * * Each recording clerk and copyist shall receive as his full compensation therefor five cents for each folio recorded or copy made by him pursuant to the direction or authority of said register"

—and substituted therefor these words:

"All copyists or recording clerks of current records now appointed or hereafter to be appointed but not to exceed thirty-five, twelve hundred dollars each."

The effect of this legislation was to abolish the position of temporary copyist and provide for a force of regular copyists, at a stated salary, the number of which was left to the discretion of the register, providing it did not exceed 35. The amendment of 1906 re-enacted section 2 of the act of 1901, with certain changes as to the amount

to be paid for salaries to those already occupying positions theretofore specified. Some new positions were created, and among them was that of general clerks, 10 in number, whose duties were not specifically described. The provision for the appointment of 35 copyists at a salary of $1,200 each was continued, and the act further provided that:

"The register shall from time to time in his discretion employ temporary copyists in addition to the *permanent force* herein provided for. The temporary copyists shall, however, be employed only at times when there has been in the register's office such an accumulation of deeds, mortgages and other papers that the register is unable to have them actually copied until more than one month later than the time when they have been left at his office for recording, and at no time shall their employment continue longer than is necessary for bringing the copying up to within one month of the date of recording. The temporary copyists shall be paid at the rate of five cents per folio."

The amendment of 1913, re-enacting said section 2, did not change it in any of the particulars hereinbefore referred to, and simply created additional positions. It is of no importance in connection with this litigation. The effect of the act, as amended in 1906, so far as here important, was to fix the number of copyists absolutely at 35, instead of leaving the number to be appointed to the discretion of the register, to permit the appointment of temporary copyists in addition to the permanent force, upon certain conditions, and, in addition to the clerks specifically named, to provide 10 additional clerks whose duties are not defined.

The record on appeal shows that this happened: Apparently, the register was not entirely satisfied with the classification contained in the statute. Instead of appointing all of the salaried copyists which the act authorized, he appointed only a portion thereof, and assigned a number of these to the performance of other duties than copying records. The board of estimate, in making up the budget, very properly appropriated a sum sufficient to pay all of the 35 copyists which the act authorized. By reason of the failure of the register to appoint the number of salaried copyists specified, the work of copying fell somewhat in arrears. Thereupon the register appointed a number of temporary copyists, and then sought to compel the board of estimate to transfer an unexpended balance of the sum appropriated for the payment of other employés to the payment of the temporary copyists.

The register had no power to appoint temporary copyists until the full number of authorized salaried copyists had been appointed, and, in addition, each of the salaried copyists must be employed in the service of copying only, and must fail to keep up with current copying. Only under those conditions could temporary copyists be appointed. If the statute does not well organize the force of the register's office, the duty of the register is to seek to have the statute amended, and not to disregard its plain provisions, and assign men, whose duty under the statute is to copy records, to other duties, such as that of abstract clerks and index clerks, for which position, presumably, they have never passed a civil service examination, and then call upon the board of estimate to supply money to pay these salaries. For the same reason, under the general prayer for relief, the relief which was granted by the order in this case, compelling the board of estimate to appro-

priate a sum sufficient to pay these temporary copyists, is unauthorized, and their appointment, under the facts here disclosed, was improper.

The order appealed from should be reversed, without costs, and the motion for a peremptory writ of mandamus denied, without costs. All concur.